IN THE COURT OF COMMON PLEAS
FAIRFIELD COUNTY, OHIO

2025 MAR -5 PM 3: 13

BRANDEN C. MEYER
CLERK OF COURTS
FAIRFIELD CO. OHIO

| | | |
|---|---|---|
| Array of Soap LLC<br>1372 Ety Pointe Dr. NW, Suite B<br>Lancaster, OH 43130 | : : : | Case No: **25CV215** |
| Plaintiff, | : | Judge: **JUDGE TRIMMER** |
| v. | : | |
| Magnolia Soap and Bath Co.<br>FRCH, LLC<br>119 W. Bankhead St.<br>New Albany, MS 38652 | : : : : : | **JURY DEMAND ENDORSED HEREON** |
| Also serve: | : | |
| 706 Carter Ave.<br>New Albany, MS 38652 | : : : | |
| 401 E. Bankhead St.<br>New Albany, MS 38652 | : : : | |
| Emily Burriss<br>8824 Red Maple CV<br>Germantown, TN 38139 | : : : : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Array of Soap LLC ("Plaintiff" or "Array") for its Complaint asserts the following claims against Defendants Magnolia Soap and Bath Co. FRCH, LLC ("Magnolia") and Emily Burriss (collectively, "Defendants"):

### SUMMARY OF THE ACTION

1. Array operates a franchise offering various beauty products including handcrafted soaps, laundry detergent, and face, body and haircare products in connection with the Magnolia

Soap & Bath Co. brand[1]. The instant action arises from Defendants' fraudulent misrepresentations and violations of Ohio's franchise laws.

## PARTIES AND JURISDICTION

2. Array is an Ohio limited liability company with its principal place of business located at 1372 Ety Pointe Dr. NW, Suite B, Lancaster, OH 43130. Array operates a Magnolia Soap & Bath Co. franchise at this location.

3. Magnolia is a Mississippi limited liability company with its principal place of business located at 706 Carter Avenue, New Albany, MS 38652.

4. Upon information and belief, Emily Burriss is an individual residing at 8824 Red Maple CV, Germantown, TN 38139.

5. Jurisdiction and venue are proper in this Court pursuant to R.C. 2307.382(A)(1)-(2), R.C. 1334.15 and Civ. R. 3(C)(3) and (6).

## FACTUAL ALLEGATIONS

6. In or around December of 2022, intrigued by the origin story Magnolia shares on its website, Mrs. Williams (the owner of Array) contacted Magnolia to learn more about its franchising opportunities.

### Representations Magnolia Made to Array

7. In or around January of 2023, Magnolia provided Mrs. Williams with the Franchise Disclosure Document ("FDD") attached hereto at Exhibit A, dated May 25, 2022.

8. The FDD makes the following representations:

- Franchisor is required to purchase "all proprietary ingredients and raw materials, facial products, packaging and supplies from our Parent, and our Parent is the only approved supplier of these items…In our last fiscal year ended December 31, 2021, our Parent did not earn revenue on the sale of these items to our franchisees." (Exhibit A at Item 8, p. 13.)

---

[1] https://www.magnoliasoapandbath.com/

2

- "We estimate that your purchase or lease of products, supplies and services from approved suppliers (or those that meet our specifications) will represent…approximately 25% of your costs for ongoing operation. (Exhibit A at Item 8, p. 14.)

- "Before you open your Franchised Business, we will:…(f) provide a trainer at your premises for on-site training, supervision and assistance for two days upon the opening of your Franchise Business…(i) through our Parent, create a grand opening advertising campaign to promote the opening of the Franchised Business." (Exhibit A at Item 11, p. 16-17.)

- The Location Revenue for "Corporate5" and "Corporate4" for 2021 was $758,037 and $752,126, respectively. "'Location Revenue' includes all revenues generated onsite at the location. Online revenue is collected by us and a percentage of sales in each territory is distributed to the locations, but this amount is not included in Location Revenue." (Exhibit A at Item 19, p. 32.)

9. On January 3, 2023, Magnolia's Franchise Director at the time, Emily Burriss held a video conference with Mr. and Mrs. Williams. During this video call, Magnolia represented that the net profits for the locations disclosed in the FDD were between 30-40%.

10. On January 17, 2023, Emily Burriss represented the following: "COGS [cost of goods sold]: Ceiling of 30% as it fluctuates with national and global supply chain, inflation, etc., currently 25%, but working on getting it to 20%." (Magnolia's January 17, 2023 email attached hereto at Exhibit B.)

**Array Entered into a Franchise Agreement & Opened a Magnolia Soap Franchise**

11. On or about April 29, 2023, in reliance on the representations in the FDD and other representations made by Magnolia and Ms. Burriss, Magnolia and Array entered into the Franchise Agreement attached hereto at Exhibit C.

12. Magnolia never provided Mrs. Williams with any updates to the FDD prior to entering into the Franchise Agreement.

3

13. Pursuant to the Franchise Agreement, Array agreed to pay Magnolia an initial franchise fee of $49,500 ("Initial Fee"). (Exhibit C at §6.1.1.)

14. Array also agreed to pay Magnolia a monthly Royalty Fee equal to 6% of Gross Sales and make a Brand Fund Contribution equal to 2% of Gross Sales, as those term is defined in the Franchise Agreement. (Exhibit C at §6.1.2, 13.3.)

15. Array entered into a commercial lease and incurred expenses to renovate and furnish the premises. On September 28, 2023, Array opened its Magnolia franchise. Magnolia did not provide two days of on-site training upon the opening of the store, nor did Magnolia create a grand opening advertising campaign for the franchise as required by the Franchise Agreement. However, these shortcomings are merely the beginning.

**Magnolia is Severely Up Charging Array for Ingredients and Materials**

16. Magnolia is currently charging Array anywhere from 8%-402% above retail for ingredients and materials that Array is required to purchase from Magnolia and are necessary to formulate products.

17. By way of example, Magnolia charges Array $9.75/lb. for arrowroot whereas retailers charge $3.13/lb.; Magnolia charges Array $19.00/lb. for white mica whereas retailers charge $8.75/lb.; Magnolia charges Array $8.00/oz. for Vitamin E oil whereas retailers charge $1.99/oz; and Magnolia charges Array $40.00/lb. for menthol crystals whereas retailers charge $15.50/lb.

18. Array's cost of goods sold represents approximately 39% of its costs of operation.

**Product Ordering Issues**

19. To date, 90% of the orders Array placed with Magnolia have had discrepancies such as missing products, incorrect quantities and inclusion of products Array did not order. On

4

many of these occasions, Array did not learn that a product was out of stock or there was an issue fulfilling the order until after the order was delivered.

20. Core items such as shampoo and conditioner bars, charcoal masks, exfoliating face scrub and Vitamin C are regularly out of stock in Magnolia's warehouse. White mica, Array's most used mica and a necessary ingredient for the soap-making process, has been out of stock for weeks at a time. White mica was unavailable for purchase through Magnolia (for the third time) during the 2024 holiday season while bulk suppliers had it readily available. Dryer balls, a staple product that can be procured from multiple sources, were out of stock for 3-4 months through Magnolia over the 2023 holiday season.

21. The exorbitant cost and lack of availability of core items and necessary ingredients that Array must purchase from Magnolia have a severe impact on Magnolia's profit margins.

22. Array has communicated its concerns with the high cost and lack of availability of inventory with Magnolia on numerous occasions. Magnolia, however, has been unrelenting in its requirement that Array procure all raw ingredients, products, and supplies directly from Magnolia.

## Revenue Misrepresentations

23. Since entering into the Franchise Agreement, Array has learned the revenue figures provided by Magnolia in the FDD were false and misleading. For instance, since Array opened its franchise, Magnolia revealed that the "Corporate5" and "Corporate4" revenue figures in the FDD included online revenue, despite the prior express representation in the FDD that these figures exclude all online revenue.

24. Magnolia discloses on its website that its top 20% of franchise owners make $616,252 in revenue.[2] Array has since learned that this value is incorrect and is in direct conflict

---

[2] https://www.magnoliasoapandbath.com/pages/franchise

5

with revenues presented by Magnolia directly to Array. Magnolia represented to Array in a Town Hall Presentation that its top three stores earned revenues of $646,940.18, $601,187.96 and $586,750.84. Based on these figures alone, the top 20% of franchise owners could not possibly make $616,252 in revenue.

## Count One
### Violation of Ohio's Ohio Business Opportunity Plan Act

25. Array incorporates the preceding allegations as though they are fully restated herein.

26. The Franchise Agreement is an agreement between Array and Magnolia in which Array obtained the right to offer and sell products as a franchisee of Magnolia.

27. The Franchise Agreement obligates Array to purchase goods directly from Magnolia and pay an Initial Fee.

28. Per the Franchise Agreement, Array is prohibited from buying products from sources other than Magnolia, even when Magnolia is out of stock on those products for an extended period of time.

29. Magnolia made representations to Array including the promise of possible profit from the franchise.

30. The Franchise Agreement qualifies as a business opportunity plan under R.C. 1334.01 *et seq.*

31. Magnolia is subject to the requirements of Ohio's Business Opportunity Plan Act, R.C. 1334.01 *et seq.*

32. Magnolia violated Ohio's Business Opportunity Plan Act by, among other things, (a) making representations to Array concerning potential gross or net profit without providing data to Array to substantiate the representation (such as the number of purchasers known to the seller

6

to have made at least the same profit) prior to the execution of the Franchise Agreement; (b) making false and misleading statements regarding the net profit margins for its locations, the cost of goods sold, the revenue for "Corporate5" and Corporate4," the revenue for its top 20% of franchisees, and engaging in deceptive and unconscionable acts and practices, such as requiring that Array purchase all raw materials from Magnolia and then charging exorbitant amounts for those materials; (c) failing to make the disclosures required by R.C. 1334.02, including the number of business opportunity plans sold by Magnolia which were operating in all states at the end of 2022 and the number of business opportunity plans which were terminated, refused renewal, or repurchased by Magnolia during 2022; and (d) failing to inform Array of its right to cancel the Franchise Agreement, include notice of Array's right to cancel in the Franchise Agreement and include a completed Notice of Cancellation as an attachment to the Franchise Agreement.

33. The FDD does not comply in all material respects with the federal disclosure requirements found in 16 C.F.R. 436.1 *et. seq*. By way of example, Magnolia (a) failed to revise the FDD to reflect material changes to the disclosure between May 22, 2022 and April 23, 2023, such as the precise basis that it or its affiliates will derive revenue from required purchases by franchisees and the number of franchise units open, closed, refused renewal or repurchased by Magnolia; (b) unlawfully provided a financial performance representation outside of those reflected in Item 19 of the FDD when it represented that the net profit for the locations disclosed in the FDD were between 30-40%; (c) misrepresented the revenues of "Corporate5" and "Corporate4" in the FDD; and (d) misrepresented the revenue of its top 20% of franchises.

34. As a direct and proximate result of Magnolia's unlawful conduct, Array has suffered and continues to suffer damages in excess of $25,000.

7

35. As a result of Magnolia's unlawful conduct, Array is entitled to recover three times the amount of actual damages or $10,000, whichever is greater, as well as its reasonable attorneys' fees.

## Count Two
### Fraud

36. Defendants incorporate the preceding allegations as though they are fully restated herein.

37. Magnolia failed to disclose to Array the precise basis that it or its affiliates will derive revenue from required purchases by Array by stating its total revenue, revenues from all required purchases of products, the percentage of its total revenues that are from required purchases and its affiliates' revenues from those sales.

38. Magnolia had a duty to disclose this information pursuant to 16 C.F.R. § 436.5.

39. Magnolia represented in the FDD that the revenues for "Corporate5" and "Corporate4" exceeded $750,000 (without including online sales) and Array's purchase of products and supplies form approved suppliers would represent approximately 25% of its costs for ongoing operation.

40. Magnolia, through Emily Burriss, represented to Array that the net profit margins for the locations disclosed in the FDD were between 30-40% and the cost of goods sold was currently at 25%, with a ceiling of 30%, and Magnolia was working on lowering it to 20%.

41. Magnolia represented and currently represents on its website that its top 20% of franchisees make in excess of $616,000 in revenue.

42. These concealments and representations were material to Array entering into the Franchise Agreement and/or continuing its franchise operations.

43. Defendants knew these representations were false at the time they made them or made these statements with a reckless disregard for the truth.

44. These concealments and representations were made with the intent of misleading Array.

45. Array justifiably relied on these representations when it entered into the Franchise Agreement and/or continued its franchise operations.

46. Had Defendants disclosed the precise basis for deriving revenue (i.e. significantly up charging franchisees) and represented accurate cost of goods sold, net profit margins for the locations in the FDD and accurate revenues for Corporate5 and Corporate 4 and the top 20% of its franchisees, Array would not have entered into the Franchise Agreement and/or continued its franchise operations.

47. As a direct and proximate result of Defendants' unlawful conduct, Array has suffered and continues to suffer damages in excess of $25,000.

## Count Three
## Breach of Contract

48. Array incorporates the preceding allegations as though they are fully restated herein.

49. Magnolia and Array entered into the Franchise Agreement wherein Magnolia agreed to provide a trainer at the premises for on-site training, supervision and assistance for two days upon the opening and create a grand opening advertising campaign to promote the opening.

50. Array performed its obligations under the Franchise Agreement.

51. Magnolia failed to provide a trainer at the premises for on-site training, supervision and assistance for two days upon the opening and create a grand opening advertising campaign to promote the opening.

52. Array had to expend additional time and resources to train its employees and market its franchise.

53. As a direct and proximate result of Magnolia's unlawful conduct, Array has suffered and continues to suffer damages in excess of $25,000.

## Count Four
## Unjust Enrichment

54. Array incorporates the preceding allegations as though they are fully restated herein.

55. Array conferred benefits on Magnolia including its payment of the Initial Fee, royalty fees and contributions to the national brand fund and purchases of raw goods from Magnolia.

56. Magnolia was aware of the benefit.

57. It would be unjust for Magnolia to keep the benefit without paying Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Array of Soap LLC demands judgment against Defendants Magnolia Soap and Bath Co. FRCH, LLC and Emily Burriss as follows:

(a) An award of compensatory damages in an amount in excess of $25,000 and to the fullest extent permitted by law;

(b) An award of three times the amount of actual damages or $10,000, whichever is greater;

(c) An award of reasonable attorneys' fees and costs, in an amount to be determined at trial;

(d) Pre- and post-judgment interest; and

(d) Such additional relief as may be just and proper.

Respectfully Submitted,

_____
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
ALLEN STOVALL NEUMAN & ASHTON LLP
10 W Broad St, Ste. 2400
Columbus, Ohio 43215
Telephone: (614) 221-8500
Email: Ferguson@ASNALaw.com
Email: Nelson@ASNALaw.com

*Counsel for Plaintiff*

## JURY DEMAND

Pursuant to Civ. R. 38(B), Plaintiff Array of Soap, LLC requests a trial by jury on all issues so triable.

_____
Lindsay M. Nelson (0095560)