## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ARRAY OF SOAP, LLC | : | |
| | : | Civil Action No. 2:25-cv-00339-ALM-CMV |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge: Douglas R. Cole |
| | : | |
| MAGNOLIA SOAP AND BATH CO. | : | Magistrate Judge: Chelsey M. Vascura |
| FRCH, LLC, et al. | : | |
| | : | |
| Defendants. | : | |

---

**PLAINTIFF'S MEMORANDUM CONTRA TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

---

## I.    INTRODUCTION

Plaintiff Array of Soap, LLC ("Plaintiff") is only required to engage in mediation with Defendant Magnolia Soap and Bath Co. Frch, LLC ("Magnolia") before commencing litigation if three conditions are met: (1) Plaintiff provides notice of its claims to Magnolia's CEO, Magen Bynum; (2) Plaintiff provides notice to Magnolia of its intent to pursue legal action; and (3) Magnolia submits Plaintiff's claims to mediation within 30 days of receiving notice of Plaintiff's intent to pursue legal action. (Doc #21, PAGEID#1112 at §§20.1, 20.2.) The Franchise Agreement between Plaintiff and Magnolia clearly states that all notices must be provided in writing, sent via certified mail to the address specified in the introductory paragraph of the Agreement, and will be "deemed given on the date of delivery or the date delivery is refused." (Doc #21, PAGEID#1114 at §21.7.)

Plaintiff provided written notice of its claims to Ms. Bynum and stated its intent to pursue litigation against Magnolia in a letter dated December 11, 2024, which was sent via certified mail to the address specified in the introductory paragraph of the Franchise Agreement. The Return

Receipt from the United States Postal Service ("USPS") confirms that the letter was delivered on December 13, 2024. Under the terms of the Franchise Agreement, Magnolia had until January 12, 2025 to submit Plaintiff's claims to mediation, but it failed to do so. Accordingly, Plaintiff was not required to engage in mediation prior to initiating litigation, and Magnolia and Defendant Emily Burriss' (collectively, "Defendants") Motion to Dismiss should be denied.

Defendants' Motion to Transfer Venue based on the forum selection clause in the Franchise Agreement should also be denied. Ohio's Business Opportunity Plan Act ("OBOPA"), Ohio Rev. Code §1334 *et seq*., renders "void" any provision in a franchise agreement "restricting jurisdiction or venue to a forum outside of this state, or requiring the application of laws of another state." Ohio Rev. Code §1334.06(E). Revised Code §1334.15(A) declares that franchise agreements are a "matter affected with a public interest…and that this chapter represents a fundamental public policy for this state." The forum selection clause in the Franchise Agreement expressly states that it does not apply where it is specifically prohibited by law. (Doc #21, PAGEID#1112 at §20.3.) Defendants' attempt to enforce the forum selection clause of the Franchise Agreement and transfer this case to the U.S. District Court for the Northern District of Mississippi directly contradicts Ohio's express statutory policy and the Franchise Agreement itself, and must therefore be rejected.

As further demonstrated herein, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue ("Motion") in its entirety.

## II.     FACTUAL BACKGROUND

### A.     The Dispute Between the Parties.

The instant dispute arises from Defendants' fraudulent misrepresentation and violations of Ohio's franchise laws. (Doc #21, PAGEID#1018-23.) In April 2023, in reliance on outdated,

inflated, and unlawful financial performance representations, Plaintiff entered into a Franchise Agreement with Magnolia. (*Id*.) In September 2023, after paying an initial franchise fee of almost $50,000.00, entering into a commercial lease and expending substantial amounts of money to renovate the leased spaced, Plaintiff opened a Magnolia Soap and Bath Co. franchise. (*Id*.) Plaintiff has since learned that Magnolia is charging anywhere from 8%-402% above retail for ingredients and materials that Plaintiff is required to purchase from Magnolia and are necessary to formulate products, despite there being no disclosure in the Franchise Disclosure Document ("FDD") that Magnolia was earning any revenue from these ingredients and materials. (*Id*.) In addition, approximately 90% of the orders Plaintiff has placed with Magnolia have had missing products, incorrect quantities, and added products Plaintiff did not order. (*Id*.) Core items have been out of stock for months at a time. (*Id*.) Plaintiff attempted on numerous occasions to negotiate a resolution with Magnolia and maintain the business relationship between them, but Magnolia was unwilling to engage in good faith. (Affidavit of Benjamin Williams at ¶3, attached hereto at <u>Exhibit A</u>.) Having exhausted those efforts, Plaintiff was left with no choice but to retain counsel, issue demand letters, and ultimately, file suit. (*Id*.)

    **B.**    **Relevant Provisions of the Franchise Agreement.**

    The Franchise Agreement contains the following provisions that are relevant to Defendants' Motion:

    20.1. <u>Internal Dispute Resolution</u>. Franchisee shall first bring any claim, controversy or dispute arising out of or relating to this Agreement, the Attachments hereto or the relationship created by this Agreement to Franchisor's president and/or chief executive officer for resolution. **After providing notice as set forth in Section 21.7 below.** Franchisee must exhaust this internal dispute resolution procedure before Franchisee may bring Franchisee's dispute before a third party.

    20.2 <u>Mediation</u>. At Franchisor's option, any claim, controversy or dispute that is not resolved pursuant to Section 20.1 hereof shall be submitted to non-binding mediation. Franchisee shall provide Franchisor with written notice of Franchisee's

intent to pursue any unresolved claim, controversy or dispute, specifying in sufficient detail the nature thereof, prior to commencing any legal action. **Franchisor shall have thirty (30) days following receipt of Franchisee's notice to exercise Franchisor's option to submit such claim, controversy or dispute to mediation**. Mediation shall be conducted through a mediator or mediators in accordance with the American Arbitration Association Commercial Mediation Rules. Such mediation shall take place in the then-current location of Franchisor's corporate headquarters. The costs and expenses of mediation, including compensation and expenses of the mediator (and except for the attorney's fees incurred by either party), shall be borne by the parties equally. Franchisor may specifically enforce Franchisor's rights to mediation, as set forth herein.

20.3 <u>Governing Law and Venue</u>. This Agreement is made in, and shall be substantially performed in, the State of Mississippi. Any claims, controversies, disputes or actions arising out of this Agreement shall be governed, enforced and interpreted pursuant to the laws of the State of Mississippi. Franchisee and its Principals, **except where specifically prohibited by law**, hereby irrevocably submit themselves to the sole and exclusive jurisdiction of the state and federal courts in Mississippi. Franchisee and its Principals hereby waive all questions of personal jurisdiction for the purpose of carrying out this provision.

…

21.7 <u>Notices</u>. **Whenever notice is required or permitted to be given under the terms of this Agreement**, it shall be given in writing, and be delivered personally or by certified mail or courier, postage prepaid, addressed to the party for whom intended, and **shall be deemed given on the date of delivery or delivery is refused**. All such notices shall be addressed to the party to be notified at their respective addresses **as set forth in the introductory paragraph of this Agreement**, or at such other address or addresses as the parties may from time to time designate in writing.

(Doc #21, PAGEID#1112, 1114.)  (emphasis added.)

The introductory paragraph of the Franchise Agreement provides that Magnolia has a

"**principal place of business at 119 West Bankhead Street, New Albany, Mississippi, 38652**"

(the "Notice Address") (Doc #21, PAGEID#1078.)  (emphasis added.)

The Franchise Agreement includes a limitation of claims which purports to bar claims

arising or relating to the Franchise Agreement unless "a proceeding for relief is commenced within

4

one (1) year from the date on which Franchisee knew or should have known of the facts giving rise to such claims." (Doc #21, PAGEID#1113.)

### C. Plaintiff Provided Notice of its Claims to Magnolia Pursuant to the Franchise Agreement.

On December 11, 2024, Plaintiff sent a demand letter ("First Demand Letter") to Defendants, as well as Ms. Bynum, to the Notice Address to notify them of its claims. (Doc #21, PAGEID#1021-22, 1227-32.) The First Demand Letter requested that Defendants respond on or before December 23, 2024. (*Id.*) The letter was delivered on December 13, 2024 and a purported agent of Magnolia signed for the delivery. (Doc #21, PAGEID#1021-22, 1472.)

On January 2, 2025, in an effort to receive a substantive response from Defendants and engage in settlement negotiations, Plaintiff sent a second copy of its demand letter ("Second Demand Letter") to 706 Carter Avenue, New Albany, MS 38652, a location Plaintiff understood to be Magnolia's corporate office. (Doc #21, PAGEID#1022, 1473-78.) On January 6, 2025, the USPS left a notice of delivery of the Second Demand Letter at Magnolia's corporate office. (Doc #21, PAGEID#1022, 1479-81.)

On January 14, 2025, in a final attempt to resolve its claims prior to initiating litigation, Plaintiff sent its demand letter ("Third Demand Letter") to 401 East Bankhead Street, New Albany, MS 38652, which Plaintiff understood to be Ms. Bynum's residential address; 103B W. Bankhead Street, New Albany, MS 38652, which Plaintiff understood to be the location of a Magnolia store operated by Ms. Bynum; 1000 Barnes Crossing Rd., Ste 715, Tupelo, MS 38804, which Plaintiff understood to be the location of a Magnolia store operated by Ms. Bynum; and 1533 Highway 30 West, Myrtle, MS 38650, which Plaintiff understood to be the location of a Magnolia's warehouse. (Doc #21, PAGEID#1022-23, 1482-87.)

5

On February 5, 2025, Magnolia notified Plaintiff it was in receipt of Plaintiff's letter and expected to provide a comprehensive response "early next week." (Affidavit of Lindsay Nelson at ¶3, attached hereto as <u>Exhibit B</u>, 2/5/2025 email communication attached thereto at <u>Exhibit 1</u>.) Plaintiff did not receive a comprehensive response the following week. (*Id.*)

On February 14, 2025, Magnolia notified Plaintiff that it expected to "follow up shortly with a more comprehensive letter response" and purported to elect, "pursuant to Section 20.2 of the Franchise Agreement, to submit any claims arising out of this matter to mediation." (Nelson Affid. at ¶4, 2/14/2025 email communication attached thereto at <u>Exhibit 1</u>.)

On February 14, 2025, Plaintiff informed Magnolia's counsel (to the extent he was not already aware) that it sent the First Demand Letter to the Notice Address on December 11, 2024, it was delivered on December 13, 2024 and, as such, Magnolia's 30-day window to submit Plaintiff's claims to mediation had long since expired. (Nelson Affid. at ¶5, 2/14/2025 email communication attached thereto at <u>Exhibit 1</u>.)

On February 21, 2025, Mr. Williams, a representative of Plaintiff, notified Ms. Bynum and Magnolia's Brand President, Dianne Davis, via email that, because Magnolia has been unwilling to engage in any discussions to reach a resolution, Plaintiff intended to initiate litigation in the next few days. (Williams Affid. at ¶6, 2/21/2025 email attached thereto at <u>Exhibit 1</u>.) Although Ms. Davis responded and stated that she was going to reach out to Ms. Bynum directly and "ensure this is at the top of her list when she gets in the office in the morning," Ms. Bynum never reached out to Plaintiff. (*Id.*)

On February 25, 2025, Plaintiff finally received a substantive response from Magnolia's counsel. (Nelson Affid. at ¶6.) Magnolia, however, did not provide a counteroffer to Plaintiff's demand. (*Id.*) On March 4, 2025, counsel for Plaintiff provided a courtesy copy of its Complaint

to defense counsel. (*Id.* at ¶7, 3/4/2025 email communication attached thereto at <u>Exhibit 1</u>.) Plaintiff also communicated to defense counsel that, although Magnolia was out of time to initiate mediation pursuant to the Franchise Agreement, Plaintiff was nonetheless amenable to participating in mediation so long as Magnolia "engages in good faith and all parties agree on the mediator, time, location and description of costs." (*Id.*) As a starting point, Plaintiff requested whether Magnolia was amenable to a remote mediation via Zoom. (*Id.*) Magnolia was unwilling to participate in mediation unless Plaintiff dismissed its claims. (*Id.*)

> **D.  Plaintiff Initiated Litigation and the Parties Agreed to Engage in Early Mediation.**

On March 5, 2025, Plaintiff filed its Complaint with the Fairfield County, Ohio Court of Common Pleas; Defendants removed the case to this Court on April 1, 2025. On April 18, 2025, Defendants moved to dismiss the Complaint on grounds similar to those raised in their Motion. On June 2, 2025, Plaintiff filed an Amended Complaint (with leave of Court) to address the alleged pleading deficiencies raised in the April 18, 2025 motion, out of an abundance of caution. Defendants do not re-raise the alleged pleading deficiencies in their Motion and, instead, seek dismissal of the Amended Complaint on the sole basis that the Plaintiff allegedly failed to mediate this dispute as required by the Franchise Agreement. The parties are scheduled to mediate this case with the Court on July 22, 2025.

**III.  DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.**

> **A.  Defendants' Motion to Dismiss Should Be Denied Under Fed. R. Civ. P. 12(B)(1).**

In their Motion at p. 7-8, Defendants contend that requests to dismiss for failure to comply with a mediation provision are analyzed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). While Defendants are correct in that Courts have used 12(b)(1) and 12(b)(6) to analyze requests to

dismiss for failure to comply with a mediation clause, Defendants are not attacking the merits of the Amende Complaint here. Rather, Defendants are attacking the factual existence of subject matter jurisdiction by questioning whether the Amended Complaint is premature for failure to exhaust an alleged contractual mediation requirement. As such, this Court should analyze Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and may consider the Franchise Agreement and the affidavits attached hereto. *Gate Precast Co. v. Kenwood Towne Place, LLC*, 2009 WL 3614931, \*2 (S.D. Ohio Oct. 28, 2009).

**B.    Defendants Had Ample Opportunity to Avoid Litigation.**

Defendants state that the mediation provision in the Franchise Agreement is more important than mediation conditions in other contracts because franchisors are required to disclose all litigation commenced against them pursuant to 16 C.F.R. § 436.5(c)(iii)(B). (Doc #23, PAGEID#1243.) Defendants, however, had ample opportunity to avoid litigation. First, had Defendants truly wished to abide by the Franchise Agreement and avoid litigation, they would have updated the Notice Address. In their Motion, Defendants contend that the Notice Address was Magnolia's "prior address" and claim they never received the First Demand Letter. (Doc #23, PAGEID#1240.) However, Defendants neither amended the Franchise Agreement, designated another address in writing, nor informally notified Plaintiff of a new notice address.

Second, Defendants could have initiated mediation at any time prior to Plaintiff initiating litigation but Defendants chose not to. Although Defendants dispute whether they received the First Demand Letter, there is no dispute that they received the Third Demand Letter on January 21, 2025. Defendants were aware of Plaintiff's claims for at least six (6) weeks before this lawsuit was filed, yet they never initiated mediation with the AAA or any other alternative dispute resolution provider. It is wholly insincere for Defendants to seek dismissal of Plaintiff's claims

8

because "mediation is vital in the franchise relationship" when they themselves took no steps to invoke the process they claim is so essential. (Doc #23, PAGEID#1244.)

### C. Plaintiff Complied with the Mediation Provision in the Franchise Agreement.

Defendants contend in their Motion at p. 10-12 that Plaintiff's Complaint should be dismissed because "the parties have not engaged in mediation, as required by the plain language of the Franchise Agreement." Defendants are wrong.

#### 1. *Magnolia failed to submit its claims to mediation within 30 days of delivery of notice of Plaintiff's claims and its intent to pursue litigation.*

Magnolia contends that Plaintiff's Amended Complaint must be dismissed because it had 30 days from its receipt of the [Third] Demand Letter—received January 21, 2025—to demand mediation." (Doc #23, PAGEID#1245.) Defendants misconstrue the Franchise Agreement and the facts in making this argument.

The Franchise Agreement requires that Plaintiff attempt resolution as follows prior to initiating litigation: (1) Plaintiff must provide written notice of its claims to Magnolia's president and/or chief executive officer (Magen Bynum); (2) Plaintiff must provide written notice of its intent to pursue litigation; and (3) Plaintiff must allow Magnolia 30 days "following receipt of [Plaintiff's] notice" to exercise [its] option to submit such claim[s] to mediation." (Doc#21, PAGEID#1112 at §§20.1, 20.2) The notice provision of the Franchise Agreement deems "any notice…required or permitted to be given under the terms of this Agreement" to be "given on the date of delivery or delivery is refused" at the Notice Address. (Doc#21, PAGEID#1114 at §21.7.)

On December 11, 2024, Plaintiff sent the First Demand Letter to Defendants via certified mail to the Notice Address. (Doc #21, PAGEID#1021-22, 1227-32.) The letter was delivered on December 13, 2024, and notice was therefore deemed effective as of that date. (Doc #21, PAGEID#1021-22, 1472.) Pursuant to the Franchise Agreement, Magnolia had until January 12,

2025, to initiate mediation but failed to do so. Plaintiff also sent a Second Demand Letter to Magnolia's corporate office, which was delivered on January 6, 2025. (Doc #21, PAGEID#1022, 1479-81.) Yet, Defendants still did not initiate mediation within 30 days of receipt. Plaintiff tried on numerous occasions for over three (3) months to resolve its claims outside of litigation, but Defendants were unwilling to negotiate in good faith. Given the one-year limitation of claims, Plaintiff could not wait indefinitely for Defendants to initiate mediation. Accordingly, Magnolia failed to timely submit its claims to mediation.

### D. Assuming, *arguendo*, Plaintiff Failed to Comply with the Mediation Provision, Defendants are Not Entitled to Dismissal of the Complaint.

Defendants contend in their Motion that dismissal is warranted based on the alleged failure to mediate, but do not cite any case law that supports dismissal. A stay, not dismissal, is appropriate in the event this Court determines Plaintiff failed to comply with the mediation provision. *Brave Optical, Inc. v. Luxottica of America, Inc.,* 2024 WL 3173504, *6 (S.D. Ohio June 26, 2024) (staying case while parties mediate); *Whitestone Group, Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh, PA.,* 2016 WL 1117595, *4 (S.D. Ohio Mar. 21, 2016) (ordering parties to mediate without dismissing or staying proceedings because "mediation should not unduly delay resolution of this matter"); *Dimension Serv. Corp. v. Bayview Ford Lincoln, LLC*, 2019 WL 1200573, *1 (S.D. Ohio Mar. 14, 2019) (denying motion to dismiss and ordering the parties to mediate and then arbitrate, and then return to the court if necessary); *Gate Precast Co. v. Kenwood Towne Place, LLC*, 2009 WL 3614931, *5 (S.D. Ohio Oct. 28, 2009) (finding dismissal inappropriate and a stay unnecessary and ordering that the parties mediate); *Acme Arsena Co. v. J. Holden Constr. Co.*, 2008-Ohio-6501, ¶ 21 (8th Dist.) (granting motion to stay pending arbitration and mediation); *Swartz v. Westminister Services, Inc.,* 2010 WL 3522141, *1 (M.D.Fla. Sept. 8, 2010) ("The law is clear that when confronted with an objection that a plaintiff has initiated litigation without

10

satisfying…mediation requirements, courts routinely stay rather than dismiss the proceedings to allow for implementation of the agreed-upon dispute resolution mechanism."); *N–Tron Corp. v. Rockwell Automation, Inc.*, 2010 WL 653760, at *7 (S.D. Ala. Feb.18, 2010); *Halim v. Great Gatsby's Auction Gallery, Inc*., 516 F.3d 557, 561 (7th Cir. 2008).

Additionally, Ohio Rev. Code §1334.06(E) voids *any* provision in an agreement restricting venue to a forum outside of Ohio, including a pre-suit mediation requirement. *Zounds Hearing Franchising, LLC v. Bower*, 2017 WL 4399487, *9 (D. Ariz. Sept. 19, 2017) (voiding pre-suit mediation provision based on O.R.C. §1334 to the extent it requires the parties to mediate in Arizona as a precondition to suit). The Franchise Agreement's requirement that mediation occur in Mississippi directly conflicts with Ohio law. Plaintiff respectfully requests that, should this Court find that Plaintiff failed to engage in mediation prior to commencing litigation, it stays this case until after mediation occurs on July 22, 2025. Defendants' Motion to Dismiss must therefore be denied.

**IV.    Defendants' Motion to Transfer Venue Should Be Denied.**

A defendant requesting a transfer of venue under 28 U.S.C. §1404(a) "bears a heavy burden in opposing the plaintiff's chosen forum." *Handel's Enterprises, Inc. v. Schulenburg*, 2018 WL 3097416, *6 (N.D. Ohio June 22, 2018) (*citing Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp*., 549 U.S. 422, 430, 127 S.Ct. 1184, 1190, 167 L.Ed.2d 15 (2007). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (*citing FirstMerit Corp. v. Craves*, 2015 WL 151318, at *2 (N.D. Ohio Jan. 12, 2015). "[F]orum selection clauses do not dictate the forum." *Kerobo v. Southwestern Clean Fuels, Corp*., 285 F.3d 531, 536 (6th Cir. 2002) (*citing Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S. Ct. 2239, 101 L.Ed.2d 22 (1988)).

A Court must first determine whether a forum-selection clause is applicable to the claims at issue, mandatory, valid and enforceable. *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215 (6th Cir. 2021). An answer of "no" means the traditional forum-non-conveniens analysis applies, which has three components:

> (1) The court determines the degree of deference owed the plaintiff's forum choice, and then asks if the defendant has met its burden of (2) showing an adequate alternative forum, and (3) showing that the plaintiff's chosen forum is unnecessarily burdensome based on a balancing of public-interest and private-interest factors.

*Id.* at 214, 216 (internal quotations omitted). An answer of "yes" to all those questions means plaintiff must demonstrate public factors weigh heavily against dismissal. *Id.* at 216. When a contract contains an applicable, mandatory, valid and enforceable forum-selection clause, the Court should consider public-interest factors such as the following:

> [A]dministrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* at 215.

A. **The Forum Selection Clause is Not Enforceable under OBOPA.**

The presumption in favor of enforceability of a forum selection clause can be defeated by showing, among other things, that "enforcing the forum selection clause would contravene a strong public policy of the forum state." *Id.* at 219-220. Enforcing a forum selection clause contravenes a strong public policy of states in this Circuit where statutes rendering such clauses void and unenforceable exist. *Id.*; *Zounds Hearing Franchising, LLC v. Bower*, 2017 WL 4399487, *9 (D.

Ariz. Sept. 19, 2017) (holding that the Arizona choice of law and venue provisions in the franchise agreement are expressly invalid under Ohio Rev. Code § 1334.06(E)).

As Defendants point out in their Motion at p. 18, OBOPA **renders "void" any provision in a franchise agreement "restricting jurisdiction or venue to a forum outside of this state**, or requiring the application of laws of another state." Ohio Rev. Code §1334.06(E) (emphasis added). Section 1334.15(B) of OBOPA states that any waiver by a franchisee of any section of OBOPA or "any venue or choice of law provision" that deprives a franchisee "who is an Ohio resident of the benefit of those sections **is contrary to public polic**y and is void and unenforceable. (emphasis added.) Notably, O.R.C. §1334.15(A), which Defendants do not include in their Motion, states as follows:

> The general assembly declares that the offer and sale of business opportunity plans is a matter affected with a public interest. The general assembly further declares that it is the intent of this chapter to protect prospective purchasers of business opportunity plans by requiring that sellers provide the purchasers with the information necessary to make an intelligent decision about the business opportunity plan being offered, and that **this chapter represents a fundamental public policy for this state**.

(emphasis added).

Despite these straightforward statutory provisions, Defendants contend that the forum selection clause should be enforced because (1) "Ohio law generally recognizes the validity of forum selection clauses; (2) Magnolia complied in all material respects with the FTC Rule such that OBOPA does not apply; and (3) transferring the case to Mississippi would alleviate congestion of this Court's docket. (Doc #23, PAGEID#1250-54.) Defendants are wrong as to all three points.

1. ***The Franchise Agreement expressly states that the forum selection clause does not apply if it is prohibited by law.***

The Franchise Agreement expressly states that the parties agree to submit themselves to jurisdiction of the state and federal courts of Mississippi "except where specifically prohibited by law." (Doc#21, PAGEID#632 at §1112.) As OBOPA specifically prohibits provisions in franchise agreements that restrict jurisdiction to a forum outside of Ohio, the forum selection clause in the Franchise Agreement is unenforceable. Defendants' Motion to Transfer Venue must therefore be denied.

2. ***OBOPA represents a specific public policy choice by the Ohio legislature to alter any presumption that contractual forum-selection clauses are enforceable in franchise agreements.***

Even if the Franchise Agreement did not expressly state that the forum selection clause does not apply if it is prohibited by law, enforcing the Franchise Agreement's forum-selection clause would contravene a strong public policy of Ohio. This dispute is virtually indistinguishable from *Lakeside*, 16 F.4th 209. In *Lakeside*, plaintiff and defendant entered into Business Partner Agreements ("BPA"), which contained a forum selection clause mandating that all claims relating to the BPA shall be in the District Court of Le Sueur County, Minnesota. *Id.* at 213. Plaintiff filed suit in the Western District of Michigan bringing, among other claims, claims of violation of Michigan Franchise Investment Law ("MFIL"). *Id.* at 213. The trial court dismissed the case based on the doctrine of forum non conveniens and plaintiff appealed. *Id.* The only issue on appeal was whether the parties' forum selection was enforceable. *Id.* Plaintiff argued that the forum selection clause was unenforceable because enforcing it would contravene a strong public policy of Michigan. *Id.* at 220.

The Sixth Circuit found that "MFIL's prohibition on forum-selection clauses is a strong Michigan public policy and that enforcing the forum-selection clause here would clearly contravene

that policy." *Id.* In making its decision, the Sixth Circuit considered the plain language of the MFIL rendering "void and unenforceable" any provision in the franchise agreement "requiring that… litigation be conducted outside this state," other sections of the MFIL that bolstered that policy, and the fact that the MFIL represents a specific public policy choice by the Michigan legislature to alter the default presumption of enforcement of contractual forum-selection clauses in the narrow area of franchise agreements. *Id.*

Here, OBOPA renders "void" any provision in a franchise agreement "restricting jurisdiction or venue to a forum outside of this state, or requiring the application of laws of another state." O.R.C. §1334.06(E). OBOPA also expressly states at §1334.15 that it "represents a fundamental public policy for this state" and that any choice of law provision that deprives Plaintiff of the benefits of OBOPA is "contrary to public policy and is void and unenforceable," bolstering the already straightforward restriction in O.R.C. §1334.06(E). Ohio's policy could not be clearer and enforcing the forum-selection clause here would violate that policy. OBOPA represents a specific public policy choice by the Ohio legislature to alter any presumption of enforcement of contractual forum-selection clauses in the narrow arrow of agreements that fall under OBOPA, such as the Franchise Agreement. This Court should therefore deny Defendants' Motion to Transfer Venue.

### 3. *Whether Magnolia complied in all material respects with the FTC Rule (it did not) cannot be decided at this early stage, on a procedural motion.*

Defendants contend that OBOPA does not apply because it "complied in all material respects with the FTC Rule by providing Plaintiff with its most recent FDD prior to the parties entering into the Franchise Agreement," and thus the statutory provision voiding forum selection clauses does not apply. (Doc #21, PAGEID#1253.) To the extent Defendants are seeking a decision from this Court that they complied with the FTC Rule such that OBOPA does not apply, a motion

pursuant to 28 U.S.C. is the improper vehicle. This Court should not transfer this case to Mississippi on the basis that Defendants complied with the FTC Rule.

> **4.    There is no evidence this Court's docket is more congested than the United States District Court for the District of Mississippi.**

Defendants argue that this case should be transferred to the United States District Court for the Northern District of Mississippi because "it would alleviate the congestion of this Court's docket." (Doc #23, PAGEID#1253.) The number of cases filed in each district, however, is not alone determinative of how congested a Court's docket is. Other factors, such as the number of Judges and Magistrate Judges on the Court, must be considered as well. The U.S. District Court for the Northern District of Mississippi has a total of four judges: three Senior and one Active District Judge. There are three Magistrate Judges in the U.S. District Court for the Northern District of Mississippi. The U.S. District Court in the Southern District of Ohio has a total of sixteen judges: eight District Judges and eight Senior Judges. There are ten Magistrate Judges in the U.S. District Court for the Southern District of Ohio. Thus, while the number of case filings is relevant, it must be viewed in the context of the judicial resources available to manage those filings. Defendants fail to provide any data showing that this Court is unable to manage its docket or that the Northern District of Mississippi would offer a materially faster resolution of this matter.

Moreover, the cases cited by Defendants in support of this argument are inapposite. In *Sandburg*, the court enforced a forum selection clause, but none of the claims at issue were brought under a statute expressly voiding contractual restrictions on jurisdiction or venue. *Wm. R. Hague, Inc. v. Sandburg*, 468 F.Supp.2d 952, 961 (S.D. Ohio 2006). *Kerobo* does not discuss transferring a case to alleviate congestion of the Court's docket. *Kerobo,* 285 F.3d 531. This Court should not, therefore, transfer this case solely to alleviate congestion on its docket.

16

**B.    This Court Should Retain Jurisdiction Under the Traditional Forum-Non-Conveniens Analysis.**

Because the forum selection clause in the Franchise Agreement is unenforceable, the Court should evaluate Defendants' Motion to Transfer under the traditional doctrine of forum non conveniens. Defendants failed to provide the Court with any analysis of how the Court should weigh the various relating to a forum non conveniens motions, opting instead to rely on their forum selection clause argument. *Wizie Com LLC v. Webjet Marketing N. America, LLC*, 2017 WL 4707487, *3 (E.D. Mich. Oct. 20, 2017) (denying motion to transfer venue based on forum non conveniens where defendant failed to provide the court with any analysis of how the Court should weigh the various factors relating to a forum non conveniens motion). Defendants state that Magnolia's headquarters are located in Mississippi and thus "Mississippi is not unreasonably inconvenient to the parties and the witnesses," but Defendant fail to explain how the United States District Court for the District of Mississippi, over 600 miles away, is more convenient to litigate this dispute or litigation in this Court is unnecessarily burdensome. (Motion at p. 15.)

The factors relating to the parties' private interests—"relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive"—do not weigh in Defendants' favor. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981). Although Magnolia is headquartered in Mississippi and its founder and CEO reside there, more than 62 store locations operate under the Magnolia brand throughout the Eastern United States.[1] Additionally, Plaintiff is an Ohio LLC with its sole franchise located in Ohio, which is owned and operated by individuals residing in Ohio, and Plaintiff entered into the Franchise

---

[1] https://www.magnoliasoapandbath.com/pages/locations.

17

Agreement in Ohio. Defendant Burriss is a resident of Tennessee and other key witnesses Plaintiff intends to call at trial are located in states outside of Mississippi. Most, if not all of the documents at issue in this case are stored electronically and can be accessed from anywhere. Defendants did not (and cannot) demonstrate that a U.S. District Court in Mississippi is more adequate, and that this forum is unnecessarily burdensome. As discussed below, the public interest factors also do not weigh in Defendants' favor. Accordingly, this Court should decline to transfer the case under the doctrine of forum non conveniens.

### C. Assuming, *arguendo*, the Forum Selection Clause is Enforceable, the Public Interests at Stake Defeat Transfer.

The public-interest factors weigh in favor of denying Plaintiff's Motion to Transfer Venue. With the 2012 amendment to OBOPA to add the language in Section 1334.06(E) and Section 1334.15(A), "Ohio is now the franchisee protection state on steroids." *Zounds Hearing Franchising, LLC v. Bower*, 2017 WL 4399487, *8 (D. Ariz. Sept. 19, 2017). The Ohio general assembly expressly declared in O.R.C. §1334.15 that franchise agreements are "a matter affected with a public interest…and this chapter represents a fundamental public policy for this state." Additionally, Plaintiff brings claims under an Ohio statute and Ohio law will apply to all of Plaintiff's claims. *Id.* ("[T]he state where the franchise is located and the franchisee is domiciled will always have the most significant relationship to the transaction and the parties if that state's investor protection laws are stronger and there is a conflict between that law and the law of the chosen state.") It would be fundamentally unfair to require Mississippi citizens to serve on a jury to decide matters that took place in Ohio and are governed exclusively by Ohio law. The importance of having this case adjudicated in Ohio cannot be overstated. Defendants' Motion to Transfer Venue must therefore be denied.

## V. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendants' Motion in its entirety.

Respectfully Submitted,

/s/ *Lindsay M. Nelson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
ALLEN STOVALL NEUMAN & ASHTON LLP
10 W Broad St, Ste. 2400
Columbus, Ohio 43215
Telephone: (614) 221-8500
Email: Ferguson@ASNALaw.com
Email: Nelson@ASNALaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, a copy of the foregoing was filed electronically with the Court through its Electronic Case Filing System. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ *Lindsay M. Nelson*
Lindsay M. Nelson